**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

RANDAL E. McCULLOUGH,

       Plaintiff,

vs.

AEGON USA, INC., AEGON USA,
INC. BOARD OF DIRECTORS,
PATRICK S. BAIRD, JAMES A.
BEARDSWORTH, KIRK W. BUESE,
TOM A. SCHLOSSBERG, ARTHUR C.
SCHNEIDER, MARY TAIBER, JAMES
R. TREFZ, TRANSAMERICA LIFE
INSURANCE COMPANY,
TRANSAMERICA OCCIDENTAL
LIFE INSURANCE COMPANY,
TRANSAMERICA FINANCIAL LIFE
INSURANCE COMPANY,
TRANSAMERICA INVESTMENT
MANAGEMENT LLC, DIVERSIFIED
INVESTMENT ADVISORS, INC. and
DOES 1-20,

       Defendants.

No. 06-CV-0068-LRR

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

_____

*TABLE OF CONTENTS*

I.     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . **2**

III.   *JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

IV.   *STANDARD FOR SUMMARY JUDGMENT* . . . . . . . . . . . . . . . . . . . . **7**

V.    *AMENDED COMPLAINT AND UNDISPUTED MATERIAL FACTS* . . . . **8**

VI.   ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     A.   Parties' Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     B.   Harley I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
     C.   Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
     D.   Application of Harley I to the Instant Case . . . . . . . . . . . . . . . . 20

VII.  DISPOSITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## I.  INTRODUCTION

The matter before the court is the Motion for Partial Summary Judgment ("Motion") (docket no. 66), filed by Defendants AEGON USA, Inc. ("AEGON USA"), AEGON USA, Inc. Board of Directors, Patrick S. Baird, James A. Beardsworth, Kirk W. Buese, Tom A. Schlossberg, Arthur C. Schneider, Mary Taiber, James R. Trefz, Transamerica Life Insurance Company, Transamerica Occidental Life Insurance Company, Transamerica Financial Life Insurance Company, Transamerica Investment Management LLC, and Diversified Investment Advisors, Inc. (collectively "Defendants"). Plaintiff Randal E. McCullough ("Plaintiff") resists the Motion. Neither party requested oral argument, and the court finds it is unnecessary in light of the record. Therefore, the matter is fully submitted and ready for decision.

## II.  RELEVANT PROCEDURAL HISTORY

On October 5, 2005, Plaintiff filed a Complaint in the United States District Court for the Central District of California. On March 17, 2006, Plaintiff filed a First Amended Complaint ("Amended Complaint"). The two-count Amended Complaint alleges that Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Specifically, Count I ("Prohibited Transactions Count") alleges that:

> Defendants, by their actions and omissions in authorizing or causing the [AEGON USA Pension Plan ("Pension Plan") and the AEGON USA 401(k) Profit Sharing Plan ("Profit Sharing Plan") (collectively "Plans")] to invest in [investment funds of

2

AEGON USA subsidiaries and affiliates, purchase products and services of AEGON USA subsidiaries and affiliates] and pay investment management [fees] and other fees in connection therewith, caused the Plans to engage in transactions that Defendants knew or should have known constituted sales or exchanges of property between the Plans and parties in interest, the furnishing of services by parties in interest to the Plans, and transactions with fiduciaries[, in violation of section 406(a)(1)(A), (C) and (b), 29 U.S.C. § 1106(a)(1)(A), (C) and (b)[1]].

Amended Complaint at ¶ 95. Count II ("Breach of Duties Count") alleges that:

---

[1] ERISA section 406 deals with prohibited transactions and, in relevant part, provides:

(a) Transactions between plan and party in interest. . . .
    (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--
        (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
        . . .
        (C) furnishing of goods, services, or facilities between the plan and a party in interest; . . .
(b) Transactions between plan and fiduciary.
    A fiduciary with respect to a plan shall not--
    (1) deal with the assets of the plan in his own interest or for his own account,
    (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or
    (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106(a)(1)(A), (C) and (b).

3

Defendants, by their actions and omissions in authorizing or causing the Plans to invest in investment funds [of AEGON USA subsidiaries and affiliates, purchase products and services of AEGON USA subsidiaries and affiliates] and pay investment management [fees] and other fees in connection therewith, [. . .] caused the Plans to pay investment management fees that were higher than the [fees of unaffiliated investment funds; . . . Defendants] breached their duties of prudence and loyalty to the Plans[, in violation of section 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B)[2]].

*Id*. at ¶ 100.

As a direct and proximate result of Defendants' actions and omissions, Plaintiff contends that the Plans and the participants and beneficiaries of the Plans paid millions of dollars in investment management fees and other fees that are prohibited by ERISA, and, under section 502(a)(2), 29 U.S.C. § 1132(a)(2),[3] and section 409(a), 29 U.S.C. §

---

[2] ERISA section 404 generally addresses fiduciary duties and, in relevant part, provides:

> (a) Prudent man standard of care.
>> (1) . . . a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
>>> (A) for the exclusive purpose of:
>>>> (i) providing benefits to participants and their beneficiaries; and
>>>> (ii) defraying reasonable expenses of administering the plan;
>>> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; . . .

29 U.S.C. § 1104(a)(1)(A) and (B).

[3] ERISA section 502 pertains to civil enforcement of ERISA and, in relevant part,
(continued…)

1109(a),[4] Defendants are required to refund all of the fees that the Plans paid to AEGON USA subsidiaries and affiliates.[5]  Apart from a refund or restoration of all fees paid,

_____

[3] (...continued)
states:

(a) Persons empowered to bring a civil action.
A civil action  may be brought--
. . .
(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under [29 U.S.C. § 1109]; . . .

29 U.S.C. § 1132(a)(2).

[4] ERISA section 409, in relevant part, provides:

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.  A fiduciary may also be removed for a violation of section 411[, 29 U.S.C. § 1111,] of this Act.

29 U.S.C. § 1109(a).

[5] Apart from 29 U.S.C. § 1132(a)(2), the court notes that Plaintiff references section 502(a)(3), 29 U.S.C. § 1132(a)(3), in the subsection of the Amended Complaint pertaining to jurisdiction.  Specifically, Plaintiff states:

The Plans are "employee benefit plans" within the meaning of [section] 3(3), 29 U.S.C. § 1002(3), and Plaintiff is a "participant" within the meaning of [section] 3(7), 29 U.S.C. § 1002(7), who is authorized pursuant to [. . .] 29 U.S.C. § 1132(a)(2) and (3) to bring the present action on behalf of the participants and beneficiaries of the Salaried [sic] Plan [sic] to obtain appropriate relief under [29 U.S.C. § 1132] and [29 U.S.C. § 1109].

Amended Complaint at ¶ 13.

5

Plaintiff seeks declaratory relief; "equitable restitution and other appropriate equitable monetary relief"; other appropriate equitable or remedial relief, which includes "the permanent removal of Defendants from any positions of trust with respect to the Plans and the appointment of independent fiduciaries to administer the Plans"; injunctive relief, which includes barring Defendants, collectively and individually, from committing further violations of their fiduciary responsibilities, obligations and duties; attorneys' fees and costs pursuant to section 502(g), 29 U.S.C. § 1132(g), and/or the Common Fund doctrine; and other relief that the court deems equitable and just. Amended Complaint at ¶ 1-5 of Prayer for Relief. As a participant of the Plans, Plaintiff brings the instant action on behalf of the Plans and the participants and beneficiaries of the Plans.

On May 2, 2006, the United States District Court for the Central District of California granted Defendants' Motion to Change Venue and transferred the case to this court.

On October 31, 2006, Defendants filed the Motion. On December 6, 2006, the court permitted Defendants to file a Supplement to their Appendix to the Motion. On December 29, 2006, Plaintiff filed a Resistance. On January 31, 2007, Defendants filed a Reply and a Second Supplement to their Appendix to the Motion. On February 6, 2007, Plaintiff sought to file a Surreply. On February 7, 2007, the court denied Plaintiff's request to file a Surreply.

On September 28, 2007, the court granted Defendants' Motion and indicated that the instant memorandum opinion would be filed.

On October 10, 2007, Plaintiff filed an unresisted motion to add parties and amend the Amended Complaint. On October 12, 2007, the court granted such motion. On October 16, 2007, Plaintiff filed the Second Amended Complaint.[6]

---

[6] In light of the court's September 28, 2007 order and the fact that the Second Amended Complaint does not substantially alter the Amended Complaint, the court deems

(continued…)

6

### III. JURISDICTION

Pursuant to 28 U.S.C. § 1331, the court has federal question subject matter jurisdiction over this dispute, that is, the Prohibited Transactions Count and the Breach of Duties Count, because Plaintiff's claims arise under ERISA. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

### IV. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it is a fact that "'might affect the outcome of the suit under the governing law . . . .'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson,* 477 U.S. at 248). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005); *Woods*, 409 F.3d at 990.

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see,*

---

[6](...continued)
it appropriate to rely on the Amended Complaint for purposes of the Motion.

Case 1:06-cv-00068-LRR   Document 90   Filed 10/30/07   Page 7 of 27

*e.g., Anderson*, 477 U.S. at 248; *Janis v. Biesheuvel*, 428 F.3d 795, 799 (8th Cir. 2005). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## V. *AMENDED COMPLAINT AND UNDISPUTED MATERIAL FACTS*

As explained above, the Amended Complaint consists of two counts against Defendants: the Prohibited Transactions Count and the Breach of Duties Count. If successful, the Prohibited Transactions Count and the Breach of Duties Count would impose personal liability on Defendants pursuant to 29 U.S.C. § 1109(a) and 29 U.S.C. § 1132(a)(2). Plaintiff seeks relief under 29 U.S.C. § 1109(a) and bases standing upon 29 U.S.C. § 1132(a)(2).

In support of the Motion, Defendants submitted the following statement of undisputed material facts:

> 1. [Plaintiff] is a former employee of Life Investors Insurance Company of America ("Life Investors"), a subsidiary of [AEGON USA].
>
> 2. Plaintiff was hired on October 14, 1996 and was discharged for cause by Life Investors on June 2, 2005. As a result of his employment with Life Investors, Plaintiff is a participant in two retirement plans covered by [ERISA: the Pension Plan and the Profit Sharing Plan].
>
> 3. In Plaintiff's original complaint filed [on] October 5, 2005, and his [Amended Complaint] filed on March 17, 2006, Plaintiff alleges that [Defendants] breached their fiduciary duties under ERISA "by causing the Plans to purchase investment products and services from AEGON [USA] Subsidiaries and Affiliates." Specifically, the [Amended Complaint] alleges that [Defendants] breached ERISA fiduciary duties and caused the Plans to engage in ERISA prohibited transactions by entering into insurance and investment management contracts with various AEGON USA affiliates, including [Transamerica Life Insurance Company and Transamerica Occidental Life Insurance Company], that

8

allegedly paid "investment management fees that were higher than the norm for such products." The [Amended Complaint] further alleges that "[t]he Plans paid millions of dollars in investment management fees to AEGON [USA] Subsidiaries and Affiliates."

4.      The Pension Plan is a defined benefit plan, as distinct from the Profit Sharing Plan, which is a defined contribution plan. A defined benefit plan provides benefits from a pool of assets from which an employee is entitled to receive fixed, periodic payments upon retirement. The Pension Plan has never failed to pay benefits owed to its participants and beneficiaries over its seventeen year life. At the present time, AEGON USA does not intend to terminate the Pension Plan. Furthermore, the Pension Plan was overfunded at the time of the filing of Plaintiff's initial [C]omplaint on October 5, 2005, and indeed has been substantially overfunded from 2001 to the present.

5.      To determine the Pension Plan's funded level, the Pension Plan's actuaries, Towers, Perrin, Forster & Crosby, Inc. ("Towers Perrin"), prepare an annual report of the Pension Plan's assets and liabilities known as the AEGON USA Pension Plan Actuarial Valuation Reports (the "Valuation Reports"). These Valuation Reports compare the Pension Plan's assets with its liabilities, which are calculated using several alternative methods, including the Retirement Protection Act of 1994 ("RPA '94"), Financial Accounting Standard 35 ("FAS 35") and Actuarial Accrued Liability ("AAL") methods.

6.      The RPA '94 method is among the methods employed by Towers Perrin to determine whether AEGON USA is required to contribute to the Pension Plan. ERISA requires plan sponsors to make "deficit reduction contributions" in the event the funded status of the plan falls below a specified level. The deficit reduction contribution requirement is generally triggered if the plan's "funded current liability percentage" is less than 90%. A plan's "funded current liability percentage" is calculated by dividing the plan's assets

9

by its current liability. Under RPA '94, "current liability" is estimated based on accrued benefits using interest rates and mortality tables prescribed by ERISA. Current liability is intended to estimate the shut-down liability of the plan.

7.     FAS 35 was developed by the Financial Accounting Standards Board to comply with ERISA's requirement that financial statements and schedules included with a plan's Form 5500 must conform to generally accepted accounting principles. Under FAS 35, the Pension Plan's funded status is determined by calculating the estimated present value of accumulated plan benefits ("PVAB") and comparing that value to the fair market value of the plan's assets. PVAB is the estimated amount needed to pay all currently accrued benefits as they come due, assuming the plan remains ongoing. If the value of a plan's assets exceeds the [PVAB] as of the date of the measurement, the plan is considered to be in a surplus position on this measure.

8.     The AAL method is another of the methods used by Towers Perrin to determine whether AEGON [USA] is required to contribute to the Pension Plan, and the amount of any required contributions. The AAL method is largely similar to the FAS 35 method, except that the AAL method takes into account plan participants' future increases in pay, and the corresponding increase in the plan's estimated liabilities. AAL is a long term measure of the plan's funded status from the sponsor's perspective.

9.     The Valuation Reports demonstrate that the Pension Plan was substantially overfunded from January 1, 2001 to the present under all three methods. Under the RPA '94 method, the Pension Plan was overfunded by $463,598,991 (representing a funded percentage of 125.2%) as of January 1, 2006. Under the FAS 35 method, the Pension Plan was overfunded by $910,554,647 (representing a funded percentage of 165.5%), also as of January 1, 2006. Under the AAL method, the Pension Plan was overfunded by $884,273,424 (representing a funded percentage of 157.9%), again as of January 1, 2006. Indeed, at times from 2001 to the

10

present, the Pension Plan had more than a $1 billion surplus measured under all three valuation methods. In sum, the Pension Plan has been overfunded at all times relevant to Plaintiff's claim[s].

*See* Statement of Undisputed Material Facts at 2-5 (footnotes and citations omitted). Plaintiff agrees that the material facts, as stated by Defendants, are undisputed.

## VI. ANALYSIS

### A. Parties' Arguments

Defendants' Motion seeks summary judgment on the Prohibited Transactions Count and the Breach of Duties Count insofar as they concern the Pension Plan; the Motion does not apply to the Profit Sharing Plan component of the Prohibited Transactions Count or the Breach of Duties Count. Relying on the Eighth Circuit Court of Appeals' decision in *Harley v. Minnesota Mining and Manufacturing Company*, 284 F.3d 901 (8th Cir. 2002) ("*Harley I*"), Defendants contend that Plaintiff lacks standing to sue under 29 U.S.C. § 1132(a)(2) because, at all relevant times, the Pension Plan maintained a substantial surplus, AEGON USA remains financially sound and the Pension Plan never failed to meet its payment obligations. Defendants submit that the facts pertaining to the Pension Plan, that is, Plaintiff's defined benefit plan, are analytically identical to the facts in *Harley I*, and summary judgment is warranted in light of the Eighth Circuit Court of Appeals' conclusions regarding standing and prudential considerations. Further, Defendants maintain that, although the Eighth Circuit Court of Appeals did not rely exclusively on standing principles to affirm the district court's decision to grant summary judgment, the reasoning of *Harley I* is applicable to the Prohibited Transactions Count and the Breach of Duties Count. Finally, Defendants argue that, to the extent there is a policy interest in deterring ERISA prohibited transactions that is distinct from deterring violations of the general fiduciary duties set out in 29 U.S.C. § 1104, the government is capable of vindicating such interest.

11

In his Resistance, Plaintiff asserts that *Harley I* is inapposite for two reasons. First, Plaintiff maintains that, unlike the *Harley I* plaintiffs who alleged that a fiduciary imprudently invested plan assets, he is alleging that Defendants breached their fiduciary duty of loyalty to the Pension Plan and engaged in prohibited transactions when they put the fee-generating interests of AEGON USA ahead of the interests of the Pension Plan. Stated differently, Plaintiff states that he is alleging on-going conflicts, self-dealing and prohibited transactions, and *Harley I* did not address whether participants who make such allegations have standing. Plaintiff contends that he suffered palpable injuries for purposes of Article III standing and prudential considerations do not bar his allegations concerning the Pension Plan. Second, Plaintiff alleges that *Harley I* does not preclude his request for injunctive relief. Plaintiff argues that the Amended Complaint alleges a pattern and practice of past and on-going breaches of fiduciary duties and prohibited transactions for which he seeks relief, and, in contrast, the *Harley I* plaintiffs sought to recover losses based on a single, arms-length investment made by a fiduciary who had no relationship to the investment manager or the investment fund. Plaintiff claims that the injuries he suffered are likely to be redressed by the relief he requests. Given those distinctions, Plaintiff argues that summary judgment with regard to the Pension Plan is inappropriate.

In their Reply, Defendants point out that Plaintiff conceded that the material facts are not disputed, and, although Plaintiff recognizes that the court is required to follow the precedent of the Eighth Circuit Court of Appeals, he attacks the analysis in and holding of *Harley I*. Further, Defendants argue that Plaintiff's attempts to distinguish *Harley I* based on the remedy sought or a perceived difference between a prohibited transaction claim pursuant to 29 U.S.C. § 1106(b)(1) and other claims pursuant to ERISA are baseless. Specifically, Defendants state that the *Harley I* standing inquiry is applicable to prohibited transactions claims as well as prudence claims and, to support his argument concerning the remedies sought, Plaintiff falsely assumes that the *Harley I* plaintiffs did not seek injunctive relief and equitable remedies.

12

### *B.* **Harley I**

Because Defendants heavily rely on *Harley I*, it is appropriate to consider it in detail. The facts and legal conclusions of *Harley I* are as follows:

Minnesota Mining and Manufacturing Company ("3M") is responsible for directing the investment of the assets in its Employee Retirement Income Plan ("3M Plan"), a defined benefit plan. *Harley I*, 284 F.3d at 903. 3M delegated such responsibility to the Pension Asset Committee ("PAC"). *Id.* 3M and the PAC are fiduciaries of the 3M Plan. *Id.* In 1990, the PAC decided to invest $20 million of the 3M Plan's assets in the Granite Corporation ("Granite"), a hedge fund. *Id.* at 903-04. Further, the 3M Plan agreed to pay Granite's investment advisor, Askin Capital Management ("ACM"), a fee that was contingent on the success of the investment in Granite, and the 3M Plan paid ACM approximately $1.17 million in March of 1993. *Id.* at 908. ACM, which was a fiduciary to the 3M Plan, determined the value of the investment in Granite without an independent valuation. *Id.* After Granite declared bankruptcy in April 1994, the 3M Plan lost its entire investment. *Id.* at 904. Nonetheless, between 1993 and 1998, 3M's voluntary contributions to the 3M Plan exceeded ERISA's minimum funding requirements, and the 3M Plan maintained a substantial surplus. *Id.* at 903-04, 908.

Participants and beneficiaries ("the plaintiffs") of the 3M Plan brought class actions against 3M and the PAC. *Id.* at 903. In its original class action, the plaintiffs claimed that 3M was liable to the 3M Plan under 29 U.S.C. § 1109 because it breached its fiduciary duties by: (1) failing to adequately investigate Granite before investing; (2) failing to properly monitor the Granite investment; and (3) allowing the 3M Plan to enter into a prohibited transaction, that is, a performance-based compensation agreement, with ACM. *Id.* at 903-04. As relief, the plaintiffs sought: class–action certification; a declaration that 3M violated the duties, responsibilities and obligations set forth in 29 U.S.C. § 1104; all losses of principal and income resulting from the Granite investment; appropriate injunctive relief to ensure that fiduciaries of the 3M Plan prudently and thoroughly

Case 1:06-cv-00068-LRR   Document 90   Filed 10/30/07   Page 13 of 27

investigate and monitor investments of the 3M Plan in the future; reasonable costs and attorneys' fees; and other relief as may be just and proper. *See* Defendants' Second Supplement to Appendix at 1243-44 (original class action complaint).

Following discovery, the district court granted 3M summary judgment on the plaintiffs' prohibited transaction claim, that is, the claim that ACM's fee arrangement violated 29 U.S.C. § 1106(b)(1) and section 405(a)(2), 29 U.S.C. § 1105(a)(2), and it denied summary judgment on the failure to investigate and monitor claims. *Harley I*, 284 F.3d at 904. Despite its decision to deny summary judgment on those claims, the district court "ruled that the [3M] Plan did not suffer a remediable loss if 3M's voluntary contributions created an offsetting surplus and invited further discovery and a renewed motion for summary judgment on that issue." *Id*.

> After further discovery on the surplus issue, 3M renewed its motion for summary judgment. The district court concluded that the [3M] Plan had a sufficient surplus and dismissed the failure to investigate and monitor claims because the [investment in Granite] caused no 'losses to the plan' for purposes of 29 U.S.C. § 1109(a).

*Id*. at 905.

After the district court's initial summary judgment ruling, the plaintiffs filed another class action. *Id*. at 904. In the subsequent class action, the plaintiffs asserted the same claims against seven members of 3M's PAC. *Id*. As relief, the plaintiffs sought: class–action certification; a declaration that the PAC violated the duties, responsibilities and obligations set forth in 29 U.S.C. § 1104 and 29 U.S.C. § 1106; all losses of principal and income resulting from the Granite investment; appropriate injunctive relief to ensure that fiduciaries of the 3M Plan prudently and thoroughly investigate and monitor investments of the 3M Plan in the future; reasonable costs and attorneys' fees; and other relief as may be just and proper. *See* Defendants' Second Supplement to Appendix at 1259 (second class action complaint). The district court stayed the second class action until it resolved the issue of whether the 3M Plan had an adequate surplus. *Harley I*, 284 F.3d

14

at 909. Relying on the decisions that were rendered in the first action, the district court granted summary judgment in favor of the PAC and dismissed the second action because the doctrine of collateral estoppel barred the plaintiffs' prohibited transaction claim and failure to investigate and monitor claims. *Id.* at 905, 909.

On appeal, the plaintiffs asserted that 3M violated the prudent-man standard of care when it invested the 3M Plan's assets in Granite without adequate investigation and monitoring. *Id.* at 905. The Eighth Circuit Court of Appeals noted that: (1) the district court observed that the plaintiffs had to prove a breach of [fiduciary duty, that is, the prudent-man standard of care,] and loss to the 3M Plan to prevail; and (2) the district court concluded that the plaintiffs could not prove the requisite loss to the 3M Plan because of the relevant features of a defined benefit plan. *Id.* It, then, concluded that the district court's focus on losses to the 3M Plan was misplaced and determined that "the proper focus is on whether the plaintiffs have standing to bring an action under [29 U.S.C. § 1132(a)(2)] to seek relief under [29 U.S.C. § 1109(a)]." *Id.* at 905-06.

Applying *Hughes Aircraft Company v. Jacobson*, 525 U.S. 432 (1999), the Eighth Circuit Court of Appeals stressed that a loss to a defined benefit plan's surplus is merely a loss to the party responsible for funding the plan. *Id.* at 906. Specifically, it stated:

> In a defined benefit plan, if plan assets are depleted, but the remaining pool of assets is more than adequate to pay all accrued or accumulated benefits, then any loss is to plan surplus. [. . . The] plaintiffs as [3M Plan] beneficiaries have no claim or entitlement to its surplus. If the [3M Plan] is overfunded, 3M may reduce or suspend its contributions. If the [3M Plan's] surplus disappears, it is 3M's obligation to make up any underfunding with additional contributions. If the [3M Plan] terminates with a surplus, the surplus may be distributed to 3M. Thus, the reality is that a relatively modest loss to [the 3M Plan's] surplus is a loss only to 3M, the [3M Plan's] sponsor.

*Id.* at 906 (citations omitted). Given the unique features of defined benefit plans as defined by *Hughes Aircraft*, the Eighth Circuit Court of Appeals agreed with the district court's

15

conclusion that the investment in Granite did not cause the plaintiffs any cognizable harm and concluded that the plaintiffs could not sue under 29 U.S.C. § 1132(a)(2) to recover on behalf of the 3M Plan. *Id.*

According to the Eighth Circuit Court of Appeals, the plaintiffs could not rely on ERISA, that is, its remedial provisions, to recover for two reasons. *Id.* First, an irreducible constitutional minimum of standing is that a plaintiff must have suffered an injury in fact. *Id.* The case or controversy requirement of Article III prevents participants and beneficiaries who have suffered no injury in fact from suing to enforce ERISA fiduciary duties on behalf of a plan. *Id.* After comparing the 3M Plan's years of surplus with the relatively small loss to the 3M Plan by the alleged breach of fiduciary duty, the Eighth Circuit Court of Appeals concluded that the plaintiffs could not assert their failure to investigate and monitor claims because the loss caused by the investment in Granite never effected the plaintiffs' interests in the 3M Plan. *Id.* at 907-08.

Second, apart from Article III constitutional limitations, prudential principles, including the principle that requires a plaintiff's complaint to fall within the zone of interests to be protected or regulated by the statute in question, bear on the question of standing. *Id.* at 907. With respect to the plaintiffs' failure to investigate and monitor claims, the Eighth Circuit Court of Appeals stated:

> [T]he primary purpose of ERISA is the protection of individual pension rights. [. . .T]he basic remedy for a breach of fiduciary duty is to restore plan participants to the position in which they would have occupied but for the breach of trust. [Since] the ongoing [3M Plan] had a substantial surplus before and after the alleged breach and a financially sound settlor responsible for making up any future underfunding[, the] individual pension rights of [the plaintiffs] are fully protected[, . . . and the] purposes underlying ERISA's imposition of strict fiduciary duties would not be furthered by granting [the] plaintiffs standing [. . . .]

*Id.* at 907 (quotations and citations omitted).

16

Given those reasons, the Eighth Circuit Court of Appeals determined that the plaintiffs were not injured by the failed investment in Granite because the 3M Plan maintained a surplus at all relevant times. *Id*. at 908. Having suffered no injury in fact, the plaintiffs lacked standing under 29 U.S.C. § 1132(a)(2) for their failure to investigate and monitor claims. *Id*. at 906-08.

As to the prohibited transaction claim, the plaintiffs argued on appeal that ACM's performance-based compensation agreement violated 29 U.S.C. § 1106(a), or the prohibition against a fiduciary dealing with plan assets for its own account, because ACM determined the value of the investment in Granite and, thus, the amount of its fee. *Id*. at 908. The plaintiffs asserted that 3M breached its fiduciary duty to the 3M plan by failing to discover and remedy such prohibited transaction. *Id*. The Eighth Circuit Court of Appeals stated that, where a fiduciary allegedly violates 29 U.S.C. § 1106(a) by influencing its own compensation for investment services, the plain language of section 408(c)(2), 29 U.S.C. § 1108(c)(2), sensibly insulates the fiduciary from liability if the compensation paid was reasonable. *Id*. at 909. After noting that 3M submitted non-contradicted expert testimony that the fee paid to ACM was reasonable, the Eighth Circuit Court of Appeals affirmed the district court's decision to grant summary judgment against the plaintiffs on the grounds that the plaintiffs made no showing that the fees paid to ACM were unreasonable. *Id*. at 908-09.

Concerning the second class action against the PAC, the plaintiffs argued on appeal that the district court should not have applied collateral estoppel to the failure to investigate and monitor claims because the PAC's liability is not identical to that of 3M for the purpose of establishing the required element of a loss to the 3M Plan. *Id*. at 909. The Eighth Circuit Court of Appeals reiterated that it did not agree with the district court's finding that there were no losses to the 3M Plan, and it determined that its earlier conclusion that the 3M Plan's surplus deprived the plaintiffs of standing to sue 3M because they suffered no injury in fact also applied to the claims against the PAC. *Id*. "Thus, the

17

[3M Plan] surplus issue, which was 'actually and necessarily' litigated in the [first class action], bars [the] plaintiffs' claims in the second [class action] by reason of the doctrine of collateral estoppel." *Id.*

In sum, the Eighth Circuit Court of Appeals held that the district court properly dismissed the plaintiffs' claims that 3M breached its ERISA fiduciary duties by failing to adequately investigate and monitor an investment of 3M Plan assets in Granite because the 3M Plan was a defined benefit plan with a substantial surplus and, therefore, the plaintiffs had not suffered an actual injury. *Id.* at 905-09. Further, the Eighth Circuit Court of Appeals held that the district court properly dismissed the plaintiffs' claims that 3M breached its ERISA fiduciary duties by failing to discover and remedy a prohibited transaction involving ACM's compensation because the evidence established that the fee was reasonable. *Id.* Finally, the Eighth Circuit Court of Appeals determined that collateral estoppel barred the plaintiffs from asserting the same claims against the PAC. *Id.*[7]

## C. Standing

Federal courts are courts of limited jurisdiction, and the threshold requirement in every federal case is jurisdiction. *Godfrey v. Pulitzer Publ'g Co.*, 161 F.3d 1137, 1141 (8th Cir. 1998). "[A]ny party or the court may, at any time, raise the issue of subject matter jurisdiction." *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 828 (8th Cir. 2004); *see also Thomas v. Basham*, 931 F.2d 521, 522-23 (8th Cir. 1991) (clarifying that "every federal court has a special obligation to consider its own jurisdiction" and raise sua sponte jurisdictional issues "when there is an indication that jurisdiction is lacking, even if the parties concede the issue"). As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing. *Lujan v.*

---

[7] In a subsequent appeal brought by the plaintiffs, the Eighth Circuit Court of Appeals discussed in detail the facts and legal conclusions of *Harley I*. *See Harley v. Zoesch*, 413 F.3d 866, 868-70 (8th Cir. 2005).

*Defenders of Wildlife*, 504 U.S. 555, 561 (1992). If constitutional standing is not established by the plaintiff, the court must dismiss a plaintiff's claims for lack of subject matter jurisdiction:

> Without jurisdiction[, a] court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case.

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quotations and citation omitted).

Standing requirements have been drawn from two sources:

> Article III standing, which enforces the Constitution's [case or controversy] requirement, and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction.

*Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11-12 (2004) (quotations and citations omitted). With respect to the threshold requirements of Article III, a plaintiff must possess both constitutional and statutory standing for a federal court to have jurisdiction. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997). To prove constitutional standing, a plaintiff is required to "show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress." *Elk Grove*, 542 U.S. at 12 (citing *Lujan*, 504 U.S. at 560-61); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (discussing requirements of Article III standing); *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990) (same); *Warth v. Seldin,* 422 U.S. 490, 498-99 (1975) (stating that a court must determine whether the plaintiff has alleged a personal stake in the outcome of the controversy as to warrant his invocation of federal jurisdiction and to justify exercise of the court's remedial powers on his behalf). Although the "injury in

Case 1:06-cv-00068-LRR   Document 90   Filed 10/30/07   Page 19 of 27

fact" question touches upon concepts without "precise definitions," the concepts "have gained considerable definition from developing case law." *Allen v. Wright*, 468 U.S. 737, 751 (1984). Indeed, the Supreme Court suggests that "the question can be answered chiefly by comparing the allegations of the particular complaint to those made in prior standing cases." *Id*. at 751-52.

Once the constitutional threshold is crossed, prudential limits may be imposed, that is, standing may be denied if, as a matter of judicial self-restraint, it seems wise not to entertain the case. *Warth*, 422 U.S. at 499-500; *Oti Kaga, Inc. v. S.D. Hous. Dev. Auth.*, 342 F.3d 871, 880 (8th Cir. 2003).

> Although [the prudential dimensions of the standing doctrine have not been exhaustively defined,] prudential standing encompasses the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.

*Elk Grove*, 542 U.S. at 12 (quotations and citation omitted); *see also Harley I*, 284 F.3d at 907 (concluding prudential limits may be imposed if a plaintiff's complaint fails to fall within the zone of interests to be protected or regulated) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982)).

## D.  Application of **Harley I** *to the Instant Case*

The court is clearly constrained by the standing jurisprudence of the Eighth Circuit Court of Appeals. *See Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003) (reiterating that district courts in the Eighth Circuit are bound by the precedent of the Eighth Circuit Court of Appeals). And, as previously stated, the Supreme Court counsels courts to look to prior cases to determine if a plaintiff suffered the constitutionally required injury in fact. *Allen*, 468 U.S. at 751.

20

Here, the instant facts are comparable to the facts in *Harley I*. Specifically, the undisputed facts of the Amended Complaint indicate: (1) Plaintiff, like the plaintiffs in *Harley I*, is a beneficiary of a defined benefit plan, that is, the Pension Plan, and he has no claim to any surplus of such plan, *see Harley I*, 284 F.3d at 903-06; (2) AEGON USA, like 3M, has an obligation to make additional contributions to cover any underfunding as a result of a shortfall that may occur from the Pension Plan's investments, *id.* at 905-06; and (3) the Pension Plan, like the 3M Plan, is substantially overfunded and has never failed to meet any of its obligations, that is, pay benefits to its beneficiaries, *id.* at 904, 908.

Given those facts, no constitutional standing exists because the loss here, that is, the millions of dollars in investment management fees paid to AEGON USA subsidiaries and affiliates, did not harm Plaintiff's interests in or benefits under the Pension Plan. *See id.* at 906-07. The loss to the Pension Plan's surplus, which Plaintiff claims to have resulted from the conduct that is alleged in the Prohibited Transactions Count and the Breach of Duties Count, is only a loss to AEGON USA, the Pension Plan's sponsor. *Id.* at 906. Because he fails to establish that he suffered the constitutionally required injury in fact, Plaintiff may not bring an action on behalf of the Pension Plan. *See id.* (determining that the "limits on judicial power imposed by Article III counsel against permitting participants and beneficiaries who have suffered *no* injury in fact from suing to enforce ERISA fiduciary duties on behalf of [a defined benefit plan]" (emphasis in original)); *see also Harley v. Zoesch*, 413 F.3d 866, 869-70 (8th Cir. 2005) ("*Harley II*") (emphasizing that *Harley I* held that the plaintiffs failed to establish constitutional standing).

Further, the instant facts support the conclusion that standing should be denied as a matter of judicial self-restraint. The fully protected rights of the Pension Plan's participants and beneficiaries, including Plaintiff, "would if anything be adversely affected by subjecting the [Pension] Plan and its fiduciaries to costly litigation brought by parties who have suffered no injury . . . ." *Id.* at 907. Thus, insofar as they relate to the Pension Plan, the Prohibited Transactions Count and the Breach of Duties Count do not fall within

21

the zone of interests to be protected or regulated by 29 U.S.C. § 1132(a)(2).  *See id.*; *see also Harley II*, 413 F.3d at 870 (emphasizing that *Harley I* held that granting the plaintiffs standing would *also* violate prudential considerations).

Although Plaintiff attempts to distinguish *Harley I* on the basis that (1) the Prohibited Transactions Count and the Breach of Duties Count allege on-going conflicts, self-dealing and prohibited transactions and (2) the Amended Complaint seeks injunctive relief, Plaintiff's attempts are unavailing.  Regarding both bases, Plaintiff's focus is misplaced.  The constitutional standing analysis is a threshold inquiry, that is, it is undertaken before any analysis of ERISA.  *See Harley I*, 284 F.3d at 906 ("The doctrine of standing serves to identify cases and controversies that are justiciable under Article III.").  Regardless of whether injunctive relief or some other type of relief is sought or whether a violation of 29 U.S.C. § 1106 or 29 U.S.C. § 1104 occurred, Plaintiff must evidence an "irreducible minimum of constitutional standing . . . ." *Lujan*, 504 U.S. at 560.  Here, the "absence of adequate surplus is an element of [a plaintiff's] standing under [29 U.S.C. § 1132(a)(2)]."  *Harley I*, 284 F.3d at 908.  Plaintiff admits that the Pension Plan is substantially overfunded.  In addition, he fails to establish any cognizable harm because the alleged losses suffered as a result of the Pension Plan's excessive payments to AEGON USA's subsidiaries and affiliates bear only on AEGON USA's obligation to maintain a solvent plan, that is, it is AEGON USA's obligation to make up any underfunding with additional contributions.  *See id.* at 906.  Therefore, as to the Pension Plan, standing does not exist to pursue either the Prohibited Transactions Count or the Breach of Duties Count under 29 U.S.C. § 1132(a)(2).[8]

_____

[8] As previously noted, the Amended Complaint references 29 U.S.C. § 1132(a)(3). Plaintiff, however, does not contend that he should be permitted to rely on such section to defeat the instant Motion.  *Cf. Loren v. Blue Cross & Blue Shield*, No. 06-2090, 2007 WL 2726704, at *9-10, 2007 U.S. App. LEXIS 22408 (6th Cir. Sept. 20, 2007), *reh'g denied*, (Oct. 10, 2007) (concluding that plaintiffs have Article III standing to sue under

(continued…)

Clearly, a federal court has an obligation to assure itself that Article III standing exists, *see Friends of the Earth*, 528 U.S. at 180, and it "generally may not rule on the merits of a case without first determining that it has jurisdiction" *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, ___ U.S. ___, 127 S. Ct. 1184, 1191 (2007) (explaining *Steel Co.*, 523 U.S. at 83). Mindful of the restriction on reaching the merits of a case before making a determination regarding jurisdiction, the court acknowledges that *Harley I* is somewhat ambiguous in that it determined that the plaintiffs did not have constitutional standing to pursue relief under 29 U.S.C. § 1132(a)(2) and, then, went on to address the merits of the prohibited transaction claim. *See Harley I* at 905-09; *see also Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 913 (8th Cir. 2007) (stating that the Eighth Circuit Court of Appeals may affirm a district court's grant of summary judgment on any basis supported by the record). At the time that the district court granted summary judgment on the prohibited transaction claim, the record showed that the fee paid to ACM was reasonable, but it did not show that the 3M Plan had a sufficient surplus. *Id.* at 904-05. On the other hand, the appellate record showed that constitutional standing under 29 U.S.C. § 1132(a)(2) did not exist at the time the lawsuit was commenced. *See id.* at 905-08; *Harley II*, 413 F.3d at 872. Given the procedural history of the district court case and the Eighth Circuit Court of Appeals' broad holdings regarding 29 U.S.C. § 1132(a)(2), the ambiguity within *Harley I* does not alter the court's determination that constitutional standing is lacking.

Apart from the Eighth Circuit Court of Appeals, other Circuit Courts of Appeals have concluded that, despite the type of relief sought or the type of violation asserted, a

---

[8](...continued)
29 U.S.C. § 1132(a)(3)); *see also Variety Corp. v. Howe*, 516 U.S. 489, 512 (1996) (observing that 29 U.S.C. § 1132(a)(2) addresses fiduciary obligations related to a plan's financial integrity and 29 U.S.C. § 1132(a)(3) is "a safety net, offering appropriate equitable relief for injuries caused by violations that [29 U.S.C. § 1132] does not elsewhere adequately remedy"). Accordingly, the court need not address this issue.

Case 1:06-cv-00068-LRR   Document 90   Filed 10/30/07   Page 23 of 27

plaintiff cannot bring a suit under 29 U.S.C. § 1132(a) if constitutional standing is not established. In 2006, the Ninth Circuit Court of Appeals addressed whether plaintiffs had constitutional standing to pursue a prohibited practice claim under 29 U.S.C. § 1132(a). *Glanton v. AdvancePCS, Inc.*, 465 F.3d 1123, 1124 (9th Cir. 2006). Even though plaintiffs alleged that a pharmacy benefits management company, that is, a fiduciary of the ALCOA and K-MART welfare benefit plans, earned fees and secretly kept the spread between what it charged the welfare benefit plans for drugs and what it paid suppliers, the Ninth Circuit Court of Appeals held that plaintiffs lacked standing to sue their plans' fiduciary under ERISA because they suffered no judicially cognizable injury. *Id.* at 1124-25, 1127; *see also id.* at 1125 (remarking that the Eighth Circuit Court of Appeals in *Harley I* reached the same conclusion regarding constitutional standing). Before reaching its conclusion regarding constitutional standing, it reasoned:

> [plaintiffs do not] claim they were denied benefits or received inferior drugs. Rather, they claim that [the pharmacy benefits management company] charged the plans too much for drugs, and that this caused the plans to demand higher co-payments and contributions from participants. [They] claim that, if their suit is successful, the plans' drug costs will decrease, and that the plans might then reduce contributions or co-payments. But nothing would force ALCOA or K-Mart to do this, nor would any one-time award to the plans for past overpayments inure to the benefit of participants.

*Id.* at 1125.

More recently, the Sixth Circuit Court of Appeals addressed whether plaintiffs had constitutional standing to pursue injunctive and other equitable relief under 29 U.S.C. § 1132(a)(2). *Loren v. Blue Cross & Blue Shield*, No. 06-2090, 2007 WL 2726704, 2007 U.S. App. LEXIS 22408 (6th Cir. Sept. 20, 2007), *reh'g denied*, (Oct. 10, 2007) . In *Loren*, a health care corporation administered and processed claims for various ERISA welfare benefit plans, including self-insured or self-funded health benefit plans sponsored and maintained by Ford Motor Company and American Axle & Manufacturing. 2007 WL

24

2726704, at *1. The health care corporation negotiated rates for hospital services throughout Michigan, and the rates were reflected in the reimbursement rates and services fees that the health care provider collects from self-insured clients such as Ford Motor Company and American Axle & Manufacturing. *Id.* As the parent company of Blue Care Network, the health care corporation also negotiated hospital reimbursement rates on behalf of Blue Care Network. *Id.* at *2. Under ERISA, plaintiffs claimed that, in its agreements with Michigan hospitals, the health care corporation negotiated rates more favorable to Blue Care Network than to the Ford Motor Company and American Axle & Manufacturing self-insured plans that it administers. *Id.* They contended that the health care corporation struck a deal with hospitals whereby the hospitals agreed to accept lower reimbursement payments from Blue Care Network in exchange for the health care corporation's promise to pay those hospitals increased amounts for the services provided under the self-insured plans. *Id.* According to plaintiffs, the health care corporation violated its fiduciary duties when it inappropriately increased charges to the self-insured option in which they participated, that is, when it caused the Ford Motor Company and American Axle & Manufacturing self-insured plans to demand higher deductibles, co-payments, and/or contributions from participants. *Id.* at *3. As relief, plaintiffs sought, among other things, injunctions and other equitable remedies. *Id.*

When resolving the question of constitutional standing under 29 U.S.C. § 1132(a)(2), the Sixth Circuit Court of Appeals found that only one plaintiff stated that (1) he made contributions to the American Axle & Manufacturing self-insured plan and (2) the level of his contributions probably would have been less had the health care corporation not violated its fiduciary duties. *Id.* at *8. It, then, concluded that plaintiffs lacked constitutional standing under 29 U.S.C. § 1132(a)(2) because the only alleged injury was too speculative, conjectural or hypothetical. *Id.* at *8-9 (citing *Harley I* with approval).

Recognizing the subsequent decisions by the Ninth Circuit Court of Appeals and the Sixth Circuit Court of Appeals, it is difficult to conclude that *Harley I* is distinguishable

25

based on the reasons proffered by Plaintiff. And, as Defendants correctly point out, the plaintiffs in *Harley I* did seek injunctive relief under 29 U.S.C. § 1132(a)(2). Indeed, the plaintiffs in both class actions sought appropriate injunctive relief to ensure that fiduciaries of the 3M Plan prudently and thoroughly investigate and monitor investments of the 3M Plan in the future. *See* Defendants' Second Supplement to Appendix at 1243-44, 1259.

Further, Plaintiff's dissatisfaction with *Harley I*, that is, what he perceives to be a dramatic undercutting of ERISA's protection of defined benefit plans from fiduciary breach, is insufficient to survive summary judgment. The Eighth Circuit Court of Appeals noted that its standing "decision does not insulate a fiduciary who invests the assets of an overfunded defined benefit plan from liability to the plan for breach of the duty to invest prudently." *Harley I*, 284 F.3d at 908 n.5. Even though most fiduciaries who breach their statutory obligations to overfunded defined benefit plans are effectively immunized from liability, the Secretary of Labor and plan fiduciaries can seek redress for a breach of a fiduciary duty that is owed to an overfunded defined benefit plan, that is, they have standing to sue under 29 U.S.C. § 1132(a)(2). *Id.*; *see also McBride v. PLM Int'l., Inc.*, 179 F.3d 737, 742 (9th Cir. 1999) (stating that 29 U.S.C. § 1132(a)(2) only allows a civil action to be brought by a participant, a beneficiary, a fiduciary or the Secretary of Labor); *Tex. Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.*, 105 F.3d 210, 214 (5th Cir. 1997) (stating that only the Secretary of Labor, participants, beneficiaries or fiduciaries of plans may bring suit under 29 U.S.C. § 1109); *cf. Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 247 (2000) ("[29 U.S.C. § 1132(a)] itself demonstrates Congress' care in delineating the universe of plaintiffs who may bring certain civil actions.").

In sum, the court is bound to apply *Harley I* to the instant case. Constitutional standing is lacking, and prudential considerations counsel against granting Plaintiff standing to sue under 29 U.S.C. § 1132(a)(2). Accordingly, with respect to the Pension

Plan, judgment as a matter of law on the Prohibited Transactions Count and the Breach of Duties Count is appropriate.

## VII. DISPOSITION

For the foregoing reasons, it is hereby **ORDERED** that:

1.    Defendants' Motion (docket no. 66) is **GRANTED**; and

2.    Insofar as the Prohibited Transactions Count and the Breach of Duties Count relate to the Pension Plan, Plaintiff is **BARRED** from asserting them.

**DATED** this 30th day of October, 2007.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

Case 1:06-cv-00068-LRR   Document 90   Filed 10/30/07   Page 27 of 27